IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Tiara Bliss, Inc., <br><br>　　　　　　Plaintiff, <br><br>　v. <br><br>THE INDIVIDUALS, CORPORATIONS, LLCS, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON THE ATTACHED SCHEDULE A, <br><br>　　　　　　Defendants. | No: 1:23−cv−1954 <br><br>Hon. Harry D. Leinenweber |

**BARQCUE'S MEMORANDUM OF LAW TO DISSOLVE PRELIMINARY INJUNCTION**

　　NOW COMES BARQCUE ("Defendant"), through its counsel, the Keleher Appellate Law Group, LLC, and respectfully asks this Court to dissolve the Plaintiff's preliminary injunction.

BACKGROUND

　　Plaintiff Tiara Bliss asserts it owns a shower cap with U.S. Patent No. 9,398,780. This patent was filed on August 25, 2015 and issued on July 26, 2016. On March 28, 2023, Plaintiff filed a partially sealed Complaint for patent infringement. Doc. 1. It also filed an *ex parte* Temporary Restraining Order, Doc. 8, which the Court granted on April 6, 2023. Doc. 14. Plaintiff moved for a Preliminary Injunction on May 17, 2023. Doc. 32. On May 30, 2023, the Court granted a Preliminary Injunction until July 18, 2023. Doc. 44. Defendant is a small business located in China and operating its business on Amazon. *See* Mao Meizhen Decl. at ¶¶ 3-5, attached hereto as Exhibit A. Defendant has sold Geyoga Shower Caps via Amazon under ASIN B08R9GV8FT since 2020. *Id.* at ¶ 5. Defendant's Amazon Store was suddenly frozen on April 21, 2023 by a notification from Amazon. *Id* at ¶ 7. Before this notification, Defendant never received

any patent complaint from the Plaintiff. *Id*. at ¶ 8. The TRO did dire damage to the Defendant. *Id*. at ¶ 9. The Defendant's account of $926,359.73 is frozen as of May 30, 2023. Its ability to pay suppliers, manufacturers, and employees has thus been eviscerated. *Id*. Finally, the increased fees Amazon is charging has left the Defendant in a predicament whereby its revenues can barely match its expenses. *Id.* at ¶ 10.

## ARGUMENT

Preliminary injunctive relief is designed to minimize the hardship to parties pending the resolution of a lawsuit. *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). When evaluating the merits of a motion for preliminary injunctive relief, a district court examines whether the movant has demonstrated that: (1) it has a reasonable likelihood of success on the merits of its claim; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm if preliminary injunctive relief is denied; (4) the irreparable harm it will suffer without preliminary injunctive relief outweighs the irreparable harm the nonmoving party will suffer if the preliminary injunction is granted; and (5) the preliminary injunction will not harm the public interest. *Platinum Home Mtge. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). Here, the Plaintiff should not have been entitled to a preliminary injunction against the Defendant because the Plaintiff was not likely to succeed on the merits, the Plaintiff will not suffer irreparable harm, the Defendant will suffer irreparable harm from the injunction that is disproportionate to the alleged infringing activity, and the injunction harms the public interest. What is more, the TRO previously granted (and now the Preliminary Injunction) has substantially interfered with the Defendant's business and caused the Defendant significant loss. The Preliminary Injunction should thus be dissolved as to Defendant Barqcue.

    A.    The Plaintiff Will Not Succeed On The Merits.

District Courts in this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g., Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May

15, 2001) (citation omitted). *See also Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). FRCP Rule 65 is clear regarding issuance of a temporary restraining order without notice. The Court may only do so upon a showing of "specific facts in an affidavit or a verified complaint." FED.R.CIV.P. 65(b)(1)(A). Here, the general allegations submitted by the Plaintiff are inapplicable to the Defendant. The Plaintiff failed to specifically allege any facts of counterfeiting activities that support issuance of a preliminary injunction. The Complaint is similarly bereft of any analysis of the Defendant's alleged infringement. To be infringing, every limitation of the asserted patent claims must be found in the infringing product, either literally or by equivalence. *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988). For design patents, the ultimate inquiry for obviousness is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved. 35 U.S.C. § 103; *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1380-81 (Fed. Cir. 2009). In assessing this question, courts should avoid "hindsight bias and must be cautious of arguments reliant upon ex post reasoning." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007). One underlying issue is whether a prior art design qualifies as a "primary reference." *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1311 (Fed. Cir. 2013). A primary reference is a single reference that creates the same visual impression as the claimed design. *Id*. at 1312. Slight differences in design do not necessarily preclude a finding. *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1333 (Fed. Cir. 2014).

Here, the Plaintiff did not establish the Defendant's product is infringing. The Plaintiff provided no claim chart, which is crucial to demonstrate how the accused product maps onto the patent claims. Without a claim chart, the Plaintiff has not shown how every limitation of its asserted patent claims is found in the Defendant's product. Further, prior art renders the Plaintiff's design patent obvious, and thus invalid under 35 U.S.C. § 103.

      B.      The Plaintiff Will Not Be Irreparably Harmed.

A patentee seeking a preliminary injunction must demonstrate that irreparable injury is

likely in the absence of an injunction. *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020). Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and cannot be remedied by money. *Id*. Additionally, a patentee must show "that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement." *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1378 (Fed. Cir. 2020).

That critical connection cannot be shown here. The risk of irreparable harm to the Plaintiff is practically nonexistent because the Defendant does not sell counterfeit products. Despite making conclusory statements of the threat and potential harm to the Plaintiff, this has nothing to do with the Defendant. The timing of this lawsuit further undermines the Plaintiff's claim of irreparable harm. The Plaintiff's patent was issued in 2016. The Defendant began publicly selling its product on Amazon in December 2020. *See* Meizhen Decl. at ¶ 5. It took almost two years for the Plaintiff to sue. The lengthy delay here is incompatible with the Plaintiff's claim of impending harm. Finally, the Plaintiff's alleged losses are economic in nature and if properly proven, can be compensated later. The Court need look no further than the Plaintiff's TRO memorandum of law for confirmation. It states: "Plaintiff has its patent right only for a limited time" and that the "Plaintiff has shown a record of declining to license its patent rights and instead exploit the right of exclusion to further its interest in developing, marketing, and selling its own products." *See* Doc. 8 at pp. 7-8. These are quintessentially economic harms that can be compensated via monetary damages. Indeed, the Plaintiff has not argued how these economic losses translate into irreparable harm that transcend monetary damages.

In sum, not only did the Plaintiff not provide a claim chart to Defendant, but it also offered scant evidence to substantiate its allegations. As a matter of law, showing the balance of hardships and public interest must be more compelling. The Plaintiff has failed this standard. Considering the facts alleged, it is clear the Plaintiff is not entitled to injunctive relief to protect it from harm. The Plaintiff thus failed to establish a likelihood of irreparable harm. The Court should thus dissolve the preliminary injunction as to Defendant Barqcue.

C. The Defendant's Assets Should Be Unfrozen.

While asset freezes are common in actual counterfeiting cases, they are still an extreme remedy that should be used sparingly. A court may not freeze a defendant's assets solely to preserve a plaintiff's right to recover damages. *Grupo Mexicano de Desarrollo, S.A. v. Aliance Bond Fund, Inc.*, 527 U.S. 308, 325 (1999). Here, the Plaintiff fails to establish any facts which support a blanket-freeze of the Defendant's assets. The Plaintiff's generic allegations regarding the ill-gotten gains of foreign counterfeiters have no bearing on the Defendant. This is a sufficient basis to vacate the asset freeze. Moreover, a court cannot freeze assets that are not the proceeds of counterfeiting.

D. The Defendant Should Be Awarded Fees And Costs.

Along with unfreezing the Defendant's assets, the Court should also award fees and costs incurred in bringing this Motion. Federal Rule of Civil Procedure 65 instructs that a preliminary injunction may issue only if the movant "gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). An injunction bond compensates the defendant, if he prevails on the merits, for the harm that an injunction entered before the final decision caused him. *Ty, Inc. v. Jones Grp., Inc.,* 237 F.3d 891, 895 (7th Cir. 2001). Because that is the precise scenario here, such relief is warranted. The Defendant suffered substantial, irreparable harm due to the injunctive relief with over $900,000 restrained. As a legitimate business seller, with this restrained amount, the Defendant's business has been severely hindered. The Defendant thus asks the Court to release the bond and award damages to the Defendant for the wrongful action and for attorney's fees and costs incurred by the Defendant in bringing this Motion.

E. A Bond Should Be Ordered or Increased.

Finally, for the reasons set forth in co-Defendant Auban's Motion Opposing Preliminary Injunction, *see* Doc. 35 at pp. 8-9, which the Defendant adopts and incorporates the bond

argument section herein, the Court should further require the Plaintiff to post a bond of no less than $1,000,000.

## CONCLUSION

For the foregoing reasons, the Defendant respectfully requests the Court dissolve the preliminary injunction, order any third-party providers to release funds in Defendant's accounts and lift any restraints on Defendant's accounts, award fees and costs to the Defendant, and for such other relief the Court deems just.

May 30, 2023                     Respectfully submitted,

                                 s/ Christopher Keleher

                                 Christopher Keleher
                                 The Keleher Appellate Law Group, LLC
                                 1 East Erie Street
                                 Suite 525
                                 Chicago, IL 60611
                                 312-448-8491
                                 ckeleher@appellatelawgroup.com

CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on May 30, 2023, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court and served on all counsel of record.

Respectfully submitted,

s/ Christopher Keleher

Christopher Keleher
The Keleher Appellate Law Group, LLC
1 East Erie Street
Suite 525
Chicago, IL 60611
312-448-8491
ckeleher@appellatelawgroup.com