IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIARA BLISS INC., | ) |
|           Plaintiff, | ) |
| v. | ) Case No. 1:23-cv-01954 |
| | ) |
| | ) **Honorable Harry D. Leinenweber** |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | ) |
|           Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT POZILAN'S MOTION TO DISMISS, ALTERNATIVELY, TO DISSOLVE
THE PRELIMINARY INJUNCTION ORDER**

Defendant POZILAN (Defendant No. 2) respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff Tiara Bliss Inc.'s Complaint pursuant to Fed. R. Civ. P. 12(b)(5), or alternatively, to modify the preliminary injunction order dated May 30, 2023 (the "PI Order").).

## I. INTRODUCTION

Defendant POZILAN respectfully submits this brief in support of its motion to dismiss, or alternatively, to modify the PI Order. The service of process on POZILAN is insufficient because the email and website link service are inconsistent with the Hague Convention. Therefore, Plaintiff's Complaint against POZILAN should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(5). Alternatively, if the Court determines dismissal is not warranted, the PI Order should be modified as demonstrated below.

## II. PROCEDURAL HISTORY AND BACKGROUND FACTS

1

In this case, Plaintiff Tiara Bliss Inc. ("Plaintiff") sued 76 defendants, all of which are sellers on Amazon.com or other similar E-Commerce platforms, for patent infringement (35 U.S.C. § 1 et seq. including 35 U.S.C. § 271).

The lawsuit is based on infringement of U.S. Patent No. 9,398,780 ("the '780 Patent") (see Exhibit A to the Complaint, Dkt. # 1-2). An excerpt of the '780 Patent is listed as follows:

|  | U.S. Patent No. 9,398,780 ("the '780 Patent") |
|---|---|

POZILAN is an online storefront on Amazon.com, and has a physical office located at Rm. 315 Bldg. E, Chen Tian Nan Lang Area, Baiyun Dist., Guangzhou, Guangdong, 510080, China, the same address listed on POZILAN's Amazon storefront seller information section. See Declaration of Baolong Guo ("Guo Decl.") at ¶¶ 2, 5. POZILAN sells beauty and personal care products on Amazon.com. One of these products is the Reusable Shower Cap for Women (the "Shower Cap"). *Id.* at ¶ 6. POZILAN does not maintain separate websites, and all of POZILAN's sales are conducted through Amazon's e-commerce platform. *Id.* at ¶ 7. Once a customer orders

the Shower Cap products on Amazon.com, the products will be shipped from Amazon.com to the customer, and the payment will be sent to POZILAN's amazon account. *Id.* at ¶ 8.

POZILAN is not registered to do business in Illinois. POZILAN has no regular and established place of business in Illinois. POZILAN does not maintain any offices, employees, or telephone listings in Illinois. POZILAN has no manufacturing facility or distribution facility in Illinois. POZILAN does not pay any taxes or maintains any bank accounts in Illinois. POZILAN does not participate in any business meetings, seminars, trade shows, or other marketing related activities in Illinois. POZILAN does not have any employees who visit Illinois for business purposes, and POZILAN does not send agents in Illinois to solicit business. POZILAN does not own any real or personal property in the State of Illinois. *Id.* at ¶¶ 9-16.

The Shower Cap products complained of by the plaintiff were developed by POZILAN at its office in China. The products were not developed or manufactured in Illinois. All marketing and sales decisions related to the products were made at POZILAN's office in China. *Id.* at ¶ 20.

On May 30, 2023, the Court issued a preliminary injunction order (the "PI Order") against all non-objecting defendants until next telephonic status conference set for July 18, 2023 at 9:30 a.m. See **Exhibit B** to Guo Decl.

### III.  ARGUMENT

**A.  The Complaint Against POZILAN Should Be Dismissed Under Rule 12(b)(5) Because the Service of Process Is Insufficient**

Every defendant must be served with a copy of the summons and complaint in accordance with Rule 4. Fed. R. Civ. P. 4(b), 4(c)(1). Only proper service vests a district court with personal jurisdiction over a defendant. *Cardenas,* 646 F.3d at 1005. Thus, "actual knowledge of the existence of a lawsuit is insufficient to confer personal jurisdiction over a defendant in the absence of valid service of process." *Mid-Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297, 301 (7th

Cir. 1991). "The plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Cardenas*, 646 F.3d at 1005.

The United States and China are both signatories to the Hague Convention, a multilateral treaty intended "to simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507, 197 L. Ed. 2d 826 (2017). The Convention "specifies certain approved methods of service" and preempts methods of service inconsistent with its methods wherever it applies. *Id.*; accord *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698, 108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988). Service methods set forth in the Convention are mandatory and compliance is required "in all cases to which it applies." *Schlunk*, 486 U.S. at 699.

The Hague Convention provides that it "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters art. 1, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638.

The Hague Convention requires signatory countries to establish a Central Authority to receive requests for service of documents from other countries and to serve those documents by methods compatible with the internal laws of the receiving state. *Id.* Service through a country's Central Authority is the principal means of service under the Hague Convention. *Id.*

Rule 4 of the Federal Rules of Civil Procedure governs service of process. When the party at issue is a foreign business entity, Rule 4(h)(2) directs that service of process is authorized in the same manner as that prescribed by Rule 4(f) for serving individuals outside the United States. Rule 4(f) provides that such service may be made by means that include international agreements such as the Hague Convention or, under Rule 4(f)(3), "by other means not prohibited by international

4

agreement, as the court orders." Therefore, the alternative service methods ordered by the Court under Rule 4(f)(3) is still subject to the Hague Convention's prohibition.

Here, the Hague Convention applies to the instant case and the website link/email service is prohibited by the Hague Convention. Therefore, the alternative service pursuant to Rule 4(f)(3) was improper.

**1. The Hague Convention Applies to This Case**

By the Convention's terms there are generally two types of cases where the Convention does not apply: cases where the address of the person to be served is unknown, and cases that do not require the transmission of judicial documents abroad. Hague Convention art. 1. Neither exclusion applies here.

**First**, Plaintiff alleged in the Complaint that Defendants including POZILAN are individuals or business entities residing in the People's Republic of China or other foreign jurisdictions. See Complaint (Dkt. No. 6) at ¶ 21; Guo Decl. at ¶¶ 1, 5. Further, Plaintiff alleged that "Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of online marketplace and user accounts." See Complaint at ¶ 22. However, contrary to this allegation, the identity and physical address information of POZILAN was expressively and clearly identified in the detailed seller information section on Amazon.com. See Guo Decl. ¶ 5; **Exhibit A** to Guo Decl. Plaintiff just ignored such information completely and requested the Court's permission to serve through email and website links anyway, without any attempt to make the service through the Hague Convention. The Court in *Luxottica* has determined that the defendants' physical addresses were not unknown just because Plaintiff did not exercise reasonable diligence to determine their addresses, therefore, the Hague Convention applied to the service in that case. See *Luxottica Grp. S.p.A. v. P'ships &*

*Unincorporated Ass'n Identified on Schedule "A"*, 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019)("A plaintiff cannot close its eyes to the obvious to avoid the Hague Service Convention; the plaintiff must make reasonably diligent efforts to learn the defendant's mailing address").

**Second**, even when the Court grants alternative service through email and website link under Rule 4(f)(3), the electronic service still requires the transmittal of documents abroad; therefore, the Hague Convention applies. *Schlunk*, at 700-01 (noting that the Convention applies "where there are grounds to transmit a judicial document to a person staying abroad").

### 2. The Hague Convention Does Not Permit Email Service on A Chinese Defendant

The U.S. Supreme Court has held that the Hague Convention "pre-empts inconsistent methods of service . . . [wherever] it applies." *Schlunk*, 486 U.S. 694, 699. Even though the federal courts are split on whether the Convention permits service via email, many courts have recognized that email service is improper because the methods of service the Hague Convention allows are exclusive, and email service is not among the listed methods. See *Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'n Identified on Schedule "A"*, 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019) ("Because email would bypass the methods of service the Hague Convention authorizes, the Convention preempts it as inconsistent."); *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, No. 19-cv-01167-JST, 2020 WL 5036085, at *8 (N.D. Cal. Aug. 19, 2020) ("Service by e-mail on defendants in China is not one of the Hague Service Convention's approved methods of service. Thus, unless an exception to the Convention applies, service by e-mail on the China-based defendants in question here cannot be authorized under Rule 4(f)(3)."); see *also Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465, 471-72 (D. Mass. 2020) ("Rule 4(f)(3) does not permit e-mail service on defendants…").

### a) China's Objection to Article 10 Authorizing Service by "Postal Channels" Includes Objection to the Service by Email

Many courts have analyzed electronic mail specifically under Article 10 of the Hague Convention, which authorizes service through "postal channels." See *Luxottica*, 391 F. Supp. 3d at 827; see also *Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404, 413 (N.D. Tex. 2020). Article 10(a) of the Hague Convention says that "[p]rovided the State of destination does not object, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad." 20 U.S.T. at 361.

However, China is one of many signatories to the Hague Convention that has expressly objected to the service provisions in Article 10, including service through postal mail.[1] See *Luxottica,* 391 F. Supp. 3d at 827 (holding that service of process via email and website link on residents of China was insufficient due to China's objections to Article 10 of Hague Convention service through postal channels).

In *Prem Sales*, the court recognized the split authorities in determining whether China's objection to Article 10 of the Hague Convention authorizing service by "postal channels" **includes the objection to service by email**. See *Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404, 414 (N.D. Tex. 2020) (emphasis added). The court went through dozens of district court cases and found that some courts have come to a conclusion that "an objection to postal channels includes email service" and other courts "have held that email service is not prohibited unless a nation specifically objects to service by email." *Id.* at 414-415 (citations omitted). However, the *Prem Sales* court held that "[m]any of the cases permitting email

---

[1] See Official Website of the Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn (reprinting China's formal opposition to "the service of documents in the territory of the People's Republic of China by the methods provided by Article 10 of the Convention") (accessed on June 5, 2023).

7

service are distinguishable from the present case. In several cases, the court allowed email service only after the plaintiff attempted to serve process via the Hague Convention." *Id.* at 415 (citations omitted).

In the instant case, there is no evidence suggesting that Plaintiff has made any attempted service through the Hague Convention before it asked the Court's permission to serve defendants through email and website link. Therefore, the cases allowing email service are distinguishable from the instant case and China's objections to service through "postal channels" should be a sufficient ground to preclude service by email.

> **b) Even without China's Objection, Email Service Is Still Inconsistent with the Hague Convention's Authorized Service Methods**

No matter whether China's objection to the "postal channels" includes service by email or not, the question remains whether the Court can nevertheless authorize email service per Rule 4(f)(3). Rule 4(f)(3) allows for email service provided that it is (1) ordered by the court; and (2) not prohibited by international agreement.

Two United States Supreme Court decisions have held that compliance with the Hague Convention is mandatory when it applies and it provides the exclusive means of performing service abroad, preempting all other forms of service. See *Water Splash*, 137 S. Ct. at 1507; *Schlunk*, 486 U.S. at 705; Rule 4 Advisory Committee Notes, subdivision (f)(1) ("Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service.").

The Hague Convention does not expressly permit service by email. If a form of service is not expressly permitted by the Hague Convention, then it is otherwise impermissible and prohibited. See *Facebook*, 2020 WL 5036085, at *4. Because the Hague Convention's methods of service are exclusive and preempt inconsistent methods of service, as the Supreme Court has held,

8

service by email is necessarily improper in any case governed by the Hague Convention. The courts that have examined *Schlunk* have all agreed in following this inexorable reasoning. *See, e.g.*, *Luxottica*, 391 F. Supp. 3d at 827; *Facebook*, 2020 WL 5036085, at *8; and *Prem Sales*, 494 F. Supp. 3d at 417. To conclude otherwise would mean that the Hague Convention's forms of service are not exclusive, contrary to the Supreme Court's clear pronouncement on this subject. Articles 11 and 19 of the Hague Convention permit signatories to consent, either unilaterally or with another party, to means of service not authorized by the Convention. Hague Convention art. 11, 19. Allowing countries to consent to forms of service not authorized by the Convention would "hardly be necessary" if the Convention generally permitted any means of service . . . not explicitly authorized or prohibited by its text. Allowing Plaintiff to perform service by email would contravene the Hague Convention, which is impermissible under Rule 4(f)(3).

The reasoning of the courts permitting email service is often nonexistent. Instead, the cases simply cite each other, all going back to a simple error in relying upon a Ninth Circuit case, *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007 (9th Cir. 2002). *See Facebook*, 2020 WL 5036085, at *6 ("A reason for the tilt in the opposite direction is an overly broad reading of *Rio Properties…*"); While *Rio Properties* has some broad language about the authority to allow email service, it did not and had no reason to consider the potential conflict with the Hague Convention: "the Hague Convention does not apply in this case because Costa Rica is not a signatory." *Rio Props.*, 284 F.3d at 1015 n.4. As such, many courts that directly or indirectly rely upon *Rio Properties* ignored what should be the dispositive issue: the apparent conflict with the Hague Service Convention.

For all the reasons set forth above, Plaintiff's Complaint against POZILAN should be dismissed due to the insufficient service of process under Rule 12(b)(5).

9

**B.     In The Event Plaintiff's Complaint Against POZILAN Is Not Dismissed, The Preliminary Injunction Order Should Be Dissolved**

On May 30, 2023, the Court issued an Order granting the Preliminary Injunction (the "PI Order") against all non-objecting defendants including POZILAN until next telephonic status conference set for July 18, 2023 at 9:30 a.m. See **Exhibit B** to Guo Decl. The PI Order against POZILAN should be dissolved because the Plaintiff was not likely to succeed on the merits, and the Plaintiff will not suffer irreparable harm.

When evaluating the merits of a motion for preliminary injunctive relief, a district court examines whether the movant has demonstrated that: (1) it has a reasonable likelihood of success on the merits of its claim; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm if preliminary injunctive relief is denied; (4) the irreparable harm it will suffer without preliminary injunctive relief outweighs the irreparable harm the nonmoving party will suffer if the preliminary injunction is granted; and (5) the preliminary injunction will not harm the public interest. See *Platinum Home Mtge. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998).

**1. The PI Order Should be Dissolved because Plaintiff is Unlikely to Succeed on The Merits**

Federal Circuit law governs whether a patentee has shown a likelihood of success on the merits. *BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1400 (Fed. Cir. 2022). A patent infringement analysis requires the court to construe the claims and then compare them to the allegedly infringing product. To be infringing, every limitation of the asserted patent claims must be found in the allegedly infringing product, either literally or by equivalence. *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988).

In this case, Plaintiff failed to allege in the Complaint how POZILAN's products infringed upon the '780 Patent. Even though Plaintiff attached a claim chart to the Complaint (Exhibit C to the Complaint, Dkt. # 4-2), such chart contained no information about POZILAN's infringing

products. Plaintiff's claim chart is deficient and unable to demonstrate how the accused products map onto the patent claims. With this deficient claim chart, Plaintiff is unable to show how every limitation of its asserted patent claims is found in POZILAN's products.

### 2. There Is No Irreparable Harm to the Plaintiff

Irreparable harm is required for the Court to grant a preliminary injunction. See *Platinum Home Mtge. Corp.*, 149 F.3d at 726. Where competitive injury has already occurred, an injunction that restrains the defendant from competing with the plaintiff during the pendency of the lawsuit does not serve to preserve the status quo. *Machlett Laboratories, Inc. v. Techny Indust., Inc.*, 665 F.2d 795, 796 (7th Cir. 1981). Moreover, "delay in pursuing a preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face irreparable harm if a preliminary injunction is not entered." *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 903 (7th Cir. 2001).

In the instant case, Plaintiff failed to demonstrate what irreparable harm it will suffer from the alleged infringing activities. It seems Plaintiff only claimed economic harms in this case. Plaintiff stated in its TRO application that "Plaintiff has its patent right only for a limited time" and that the "plaintiff has shown a record of declining to license its patent rights and instead exploit the right of exclusion to further its interest in developing, marketing, and selling its own products." See Plaintiff's Motion for TRO pp. 7-8. at Dkt. # 8. In addition, Plaintiff delayed significantly to bring this lawsuit and application for preliminary injunction. POZILAN started to sell the Shower Cap products on Amazon.com in July 2020. See Guo Decl. ¶ 6. This lawsuit and PI application was brought two and half years later. The unreasonable delay undermines any argument that Plaintiff will suffer irreparable harm if the PI Order is dissolved.

### IV. CONCLUSION

For the foregoing reasons, Defendant POZILAN respectfully requests the Court dismiss this case against it in its entirety, or alternatively, to dissolve the Preliminary Injunction Order granted on May 30, 2023.

Dated: June 6, 2023

Respectfully submitted,

**KEVIN KERVENG TUNG, P.C.**
*Attorneys for Defendant POZILAN*

By: */s/ Kevin K. Tung*
    Kevin K. Tung
Queens Crossing Business Center
136-20 38th Avenue, Suite 3D
Flushing, NY 11354
Tel: (718) 939-8033
Facsimile: (718) 939-4468
ktung@kktlawfirm.com

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies on June 6, 2023 that a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court and served upon all counsel on the record and other interested parties via the CM/ECF system:

By: */s/ Kevin K. Tung*
Kevin K. Tung