# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **TIARA BLISS INC.,** | |
| Plaintiff, | Case No: 1:23-cv-01954 |
| v. | Honorable Harry D. Leinenweber |
| **The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A to the Complaint,** | **JURY TRIAL DEMANDED** |
| Defendant. | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT BARQCUE'S MOTION TO DISSOLVE PRELIMINARY INJUNCTION

Plaintiff Tiara Bliss, Inc. ("Tiara Bliss" or "Plaintiff"), by its attorneys, respectfully opposes Barqcue's Motion (Dkt. 45) to dissolve the Preliminary Injunction entered by this Court on May 23, 2023 (Dkt. 44). Barqcue's Brief in support of its Motion (Dkt. 47) is replete with errors of law and fact seemingly copied over from the unsuccessful brief in opposition to the preliminary injunction filed by Defendant Auban. *Compare* Dkt. 47 *with* Dkt. 35. Barqcue raises no new issues that would warrant reevaluating the Preliminary Injunction entered by the Court and presents no argument that could not have been brought in a timely opposition to Plaintiff's Motion for Preliminary Injunction. Rather, Barqcue's request is supported only by threadbare assertions and mischaracterizations of Plaintiff's Complaint and Motion. Barqcue's Motion must be denied.

## INTRODUCTION AND SUMMARY OF PLEADING

As alleged in Plaintiff's Complaint, Defendants each sell the same or predominantly similar shower caps which infringe Plaintiff's rights in U.S. Patent No. 9,398,780 ("the '780 Patent"). Each Defendant has been identified in this action by the seller accounts and online marketplace storefronts listed on Schedule A to the Complaint. Barqcue is the first such Defendant, *i.e.*, Def. #1, and is identified with the Business name, address, and Seller ID that were listed for Barqcue's Amazon account at the time the Complaint was filed. *See* Schedule A to the Complaint, filed as Sealed Dkt. 4, at page 1 (listing Barqcue's business name as ShenZhenShi BaQiuWangLuoKeJiYouXianGongSi; and its Amazon Seller ID as A3GB1BDOSEJSVY).

Schedule A to the Complaint also lists each infringing product being sold by the Defendants that were discovered by Plaintiff at the time the Complaint was filed. The infringing products are identified by various unique product numbers or identifiers depending on the marketplace being used by each Defendant. For Barqcue, Schedule A lists the infringing products by ASIN (Amazon Standard Identification Number) and provides the product URL where the

1

products were being sold at the time the Complaint was filed[1]. For Barqcue, the infringing products were sold under ASINs b08r9gv8ft, b08w565jy8, b08xxkhxng, b08xzhdkqm, b097d81hkb, and b09n32dsfs. *Id.* Plaintiff also included representative screenshots of the various infringing product listings for each Defendant as Exhibit B to its Complaint. (Sealed Dkt. 4-1). For Barqcue, the infringing product listing is shown on page 1 of Exhibit B to the Complaint. *Id.* at p.1.

With its Complaint, Plaintiff requested entry of a TRO to instruct the various marketplaces to remove the infringing product listings, provide contact information for the Defendants (to assist in later service and notice), provide sales information for the infringing products, and freeze the Defendants' accounts to prevent transferring assets out of those accounts. *See generally* Dkt. 8. Following a hearing on April 6, 2023, the Court granted the Motion and entered the requested TRO. *See* Dkt. 14 (Minute Entry) and Dkt. 15 (Executed TRO). Plaintiff also filed a Motion seeking leave for alternative service (via email) pursuant to Fed. R. Civ. P. 4(f)(3). (Dkt. 9). That Motion was also granted after the April 6, 2023 Hearing. (Dkt. 14).

Following extensions, the TRO was set to expire on May 18, 2023. (Dkt. 21). Before that expiration, Plaintiff filed its Motion for entry of a Preliminary Injunction and its Brief in Support. (Dkts. 31 and 32, respectively, each filed May 17, 2023). Barqcue was served before Plaintiff's Motion. *See* Dkt. 30, Proof of Service. A hearing on the Preliminary Injunction was held on May 18, 2023 and continued to May 23, 2023 to permit additional time for Defendants to appear and oppose the Motion. Despite service, notice, and additional time Barqcue failed to appear or defend against the Preliminary Injunction in any way. In fact, the only Defendant to file an opposition to the Preliminary Injunction was Defendant #6 Auban. *See* Opposition filed at Dkt. 35.

---

[1] As a result of the TRO and Preliminary Injunction entered in this case, the product listings have been removed by the various marketplaces.

Following the May 23 Hearing, the Court entered the Preliminary Injunction over Auban's Opposition. Dkt. 44[2]. Later, on May 23, 2023, Barqcue filed its appearance and on May 25, 2023, Barqcue filed an unopposed extension of its time to Answer or Otherwise Plead to the Complaint. *See* Dkts. 37 and 38, respectively. Pursuant to the Unopposed Motion, Barqcue's deadline to file its Answer or otherwise plead in response to the Complaint was June 15, 2023. (Dkt. 38). The only filing by Barqcue since the extension of time has been the present Motion seeking to dissolve the Preliminary Injunction. That Motion, however, does not respond to or attack the Complaint, does not raise Rule 12 defenses, and is not otherwise a pleading or response to the Complaint.

On May 30, 2023, Barqcue filed the instant Motion seeking to dissolve the Preliminary Injunction. Barqcue does not explain why it did not present the arguments in its Motion in response to Plaintiff's initial request for the Preliminary Injunction, why it did not present those arguments in response to the TRO entered almost two months earlier, or why it failed to appear in this action until after the Preliminary Injunction was entered at the May 23, 2023 Hearing. Nor does Barqcue state any changed circumstances that would warrant a renewed analysis of the Preliminary Injunction. Rather, Barqcue makes several unsupported assertions regarding the initial factors considered by the Court in granting the Preliminary Injunction and makes several false statements about the facts presented. Because Barqcue fails to show that any circumstances warrant vacating the Preliminary Injunction, its Motion must be denied.

I.  **STANDARD OF REVIEW**

Barqcue only presents the standard for issuing a Preliminary Injunction, not dissolving one. Dkt. 47 at 2. Even for that standard, Barqcue cites support from the Seventh Circuit. This case,

---

[2] At the May 23, 2023 Hearing, Plaintiff withdrew its request for a Preliminary Injunction against Defendant #49 (Joybuy) because the parties were discussing procedures for substituting other entities for this Defendant.

3

however, asserts patent infringement and the Preliminary Injunction enjoins further acts of infringement. The Federal Circuit has explained that a preliminary injunction enjoining patent infringement pursuant to 35 U.S.C. § 283 "involves substantive matters unique to patent law and, therefore, is governed by the law of [the Federal Circuit]." *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012) (quoting *Hybritech, Inc. v. Abbott Labs*, 849 F.2d 1446, 1451, n. 12 (Fed. Cir. 1988)). Consequently, both the original injunction and any request to dissolve the injunction are properly analyzed under Federal Circuit law. Under Federal Circuit precedent, a request to dissolve a preliminary injunction is properly denied where the motion merely raises arguments that could have been presented at the original hearing on the injunction. *Pods, Inc. v. Porta Stor, Inc.*, 177 Fed. Appx. 73, 75 (Fed. Civ. 2006) (affirming denial of motion to vacate because defendant failed to show that the magistrate judge erred in holding that the new information submitted to support vacatur could have been presented at the original hearing on the injunction). Alternatively, a motion that merely presents previously presented arguments may be viewed as a motion for reconsideration of the original order if presented timely. *See Id.* at n.2.

Here, Barqcue does not raise any arguments that could not have been presented at the original hearing on the injunction. In fact, large portions of Barqcue's brief appear to repeat the unsuccessful arguments raised by Defendant Auban in its opposition considered at the original hearing. Barqcue even repeats various errors contained in Auban's brief. *See e.g.*, Dkt. 35, p. 6 (Auban's Brief) *and* Dkt. 47, p. 3 (Barqcue's Brief) (each citing the standard for design patent infringement despite this case raising claims for infringement of a utility patent and each stating, erroneously, that Plaintiff did not include a claim chart with its Complaint).

Based on the legal standard alone, Barqcue's Motion should be denied for failure to raise any arguments that could not have been made at the hearing on the initial injunction. Even if the

4

Court were inclined to consider the injunction anew, as Barqcue appears to believe would be proper, Barqcue fails to identify any errors in the Court's reasoning and fails to support that any of the relevant preliminary injunction factors should have been weighed in its favor.

## II. ARGUMENT

To the extent that Barqcue asks that this Court consider the injunction anew, the standard for issuing an injunction is identified in Plaintiff's initial brief. (Dkt. 32). As noted, the purpose of a preliminary injunction is to preserve the status quo by preventing future infringement pending a determination on the merits. *See Abbott Labs. v. Sandoz*, 544 F.3d 1341, 1344-45 (Fed. Cir. 2008). Generally, the party seeking an injunction must show that: (1) the movant is likely to succeed on the merits; (2) irreparable harm will result if the relief is not granted; (3) the balance of hardships to the parties weighs in the movant's favor; and (4) the public interest is best served by granting the injunctive relief. *Titan Tire Corp. v. Case New Holland*, 566 F.3d 1372, 1375-76 (Fed. Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Abbott Labs*, 500 F. Supp. 2d at 815-16 (citing *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 973 (Fed. Cir. 1996)). Against this standard, the Court should recognize that the right to exclude others is among the most valuable rights – if not the most valuable right – secured by a patent grant. *See Sanofi-Synthelabo v. Apotex Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("Indeed, the encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude.") (internal citations omitted).

### A. Regarding Plaintiff's Likelihood of Success on the Merits – Barqcue Provides No Evidence of a Non-Infringement or Invalidity Defense

Barqcue attempts to raise two issues regarding Plaintiff's likelihood of success on the merits. First, Barqcue asserts that Plaintiff failed to provide evidence of infringement. The argument, however, is completely undeveloped. Barqcue cites cases regarding the "all elements

5

rule" but does not identify any particular claim element that it asserts is missing from the accused products. Rather, Barqcue seems to assert that Plaintiff failed to meet this requirement by failing to include a claim chart with its Complaint (an argument that appears to be directly lifted from Auban's brief (Dkt. 35)[3]). The problem with that argument, is that Plaintiff ***did*** include a claim chart with its Complaint. *See* Complaint Exhibit C (filed as Sealed Exhibit 4-2). That claim chart, attached hereto as Exhibit 1[4], shows where each of the elements of at least Claim 1 of the asserted patent (U.S. Patent No. 9,398,780) are shown in the accused products. While the images used in the claim chart are taken from another Defendant's listing, *id.* at header on first page, Plaintiff has properly alleged that each Defendant is selling the same infringing products with only minor variations. *See e.g.*, Complaint at ¶9 (citing screenshots shown in Exhibit B to the Complaint); ¶21, ¶23, and ¶31. Paragraphs 31 is particularly instructive on this issue:

> 31. As shown, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly the '780 Patent.

Complaint (Dkt. 1) at ¶31, *see also* ¶32 (tying the claim chart to all Defendants).

Further, while the images in the claim chart are taken from a different product listing, the product shown is undeniably the same infringing product sold by Barqcue:

---

[3] At the June 14 Hearing, Auban appeared to imply that its "motion" was still pending. However, Auban has not filed a motion, but merely an opposition to Plaintiff's Motion for Preliminary Injunction. Because the injunction was granted over Auban's objection, Auban has no pending motion or request for affirmative relief.

[4] The basis for filing under seal was to prevent Defendants from hiding assets or closing their digital storefronts before consideration of the TRO. Now that Defendants have received notice of this case, Plaintiff does not oppose lifting the seal and thus files the attached claim chart publicly.

 

Complaint Exhibit B (Sealed Dkt. 4-1), p. 1     Complaint Exhibit C (Sealed Dkt. 4-2), p. 1

The images above (taken from the screenshots attached as Exhibit B to the Complaint and the claim chart attached as Exhibit C to the Complaint) demonstrate that Barqcue is selling the same infringing product shown in the representative claim chart. The claim chart itself (attached hereto as Exhibit 1) demonstrates that each element of at least Claim 1 is present in the infringing products. Barqcue provides no argument to the contrary. Rather, Barqcue merely asserts, erroneously, that Plaintiff did not provide a claim chart. Because that allegation is demonstrably false, the rest of Barqcue's argument has no merit.

The second attempted argument regarding Plaintiff's likelihood of success on the merits is an apparent attempt to raise an invalidity defense. To the extent Barqcue's Brief presents a defense at all, the defense lacks substantial, indeed any, merit. Issued patents are presumed valid and that presumption applies at trial as well as before trial. *See Titan Tire*, 566 F.3d at 1376-77. "Thus, if a patentee moves for a preliminary injunction and the alleged infringer does not challenge validity, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue." *Id.* at 1377 (citing *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001) and *Canon Comp. Sys., Inc. v. Nu-Kote Int'lm Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998)). If the alleged infringer does raise an invalidity defense, then the patentee must show that the defense "lacks substantial merit" (*i.e.*, that the defendant did not raise a "substantial question" regarding invalidity), or the injunction

should be denied. *Genentech, Inc. v. Novo Nordisk*, 108 F.3d 1361, 1364 (Fed. Cir. 1997).

"The showing of a substantial question as to invalidity . . . requires less proof than the clear and convincing showing necessary to establish invalidity itself" at trial. *Amazon.com, Inc. v. Barnesandnoble.com, Inc*., 239 F.3d 1343, 1350 (Fed. Cir. 2001). However, a defendant is still required to make *some* showing to support its substantial question. Here, Barqcue has made no showing at all. In fact, Barqcue's entire invalidity argument, to the extent there is an argument at all, is presented under the standards for design patents. As noted above, Plaintiff has asserted a utility patent. Barqcue's invalidity "argument" in its entirety states:

> For design patents, the ultimate inquiry for obviousness is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved. In assessing this question, courts should avoid hindsight bias and must be cautious of arguments reliant upon ex post reasoning. One underlying issue is whether a prior art design qualifies as a primary reference. A primary reference is a single reference that creates the same visual impression as the claimed design. Slight differences in design do not necessarily preclude a finding. Here, the Plaintiff did not establish the Defendant's product is infringing. The Plaintiff provided no claim chart, which is crucial to demonstrate how the accused product maps onto the patent claims. Without a claim chart, the Plaintiff has not shown how every limitation of its asserted patent claims is found in the Defendant's product. Further, prior art renders the Plaintiff's design patent obvious, and thus invalid under 35 U.S.C. § 103.

Dkt. 47, p. 3 (internal quotation marks and citations omitted).

Barqcue does not identify any prior art or explain how any prior art would provide the basis for its assertion that Plaintiff's patent is invalid. Consequently, Barqcue' apparent invalidity defense lacks substantial, indeed all, merit.

### B. Regarding Plaintiff's Irreparable Harm – Barqcue Ignores Several Harms Identified in Plaintiff's Initial Briefing

For the second preliminary injunction factor, Barqcue asserts that 1) damages are not irreparable because Barqcue asserts that it is not selling counterfeit products; 2) that Barqcue has been selling the infringing product since December 2020; and 3) that damages are economic in

nature and thus can be compensated later. Each argument fails on its face or for lack of support. First, Barqcue's products need not be counterfeit to be infringing. In fact, Plaintiff has not raised a counterfeiting claim and the word "counterfeit" is not mentioned in either the Complaint or Plaintiff's Brief in Support of its Motion for Preliminary Injunction (Dkts. 1 and 32). Plaintiff has not relied upon a counterfeit theory to support its claims or its requested injunctive relief and thus whether Barqcue is selling counterfeit products has no bearing on the injunction[5]. Nor does Barqcue explain why the continued sales of counterfeit products would provide the nexus it deems necessary for damages to be irreparable but continued sales of infringing, but not counterfeit, products would not provide that nexus. In each instance, the continued sales continue to cause harm to the patentee. As alleged in Plaintiff's Complaint and Brief, that harm is irreparable because, as discussed *infra*, it cannot be fully remedied by monetary damages.

Second, the purported delay Barqcue alleges is not a delay at all. Barqcue notes that Plaintiff's patent issued in 2016 and alleges that it started selling the infringing products in December of 2020. Dkt. 47, p. 4. Barqcue then asserts that the "almost two year" time period between the beginning of infringement and the filing of this suit is a "lengthy delay" that is "incompatible with the Plaintiff's claim of impending harm." *Id*. The argument appears to have been directly lifted from Defendant Auban's unsuccessful Opposition to Plaintiff's Preliminary Injunction Motion (Dkt. 35) complete with the reference to "almost two years" as relevant to Auban's infringement apparently starting in May of 2021. Barqcue, of course, cites no support for its assertion that the time between the beginning of infringement and the filing of suit is relevant

---

[5] To be clear, while Plaintiff has not alleged that Barqcue has been selling counterfeit versions of Plaintiff's product, the lack of that allegation is not an admission that Barqcue has not been selling counterfeit products. Under Plaintiff's patent infringement claim, a product being counterfeit would be sufficient but not necessary for a finding of liability.

9

to the question of irreparable harm – Auban cited no support either. When considering injunctive relief, there are two types of delay that *may* be relevant to the question of irreparable harm. First, where the patentee unduly delays between discovering infringement and bringing suit; and second, where a patentee unduly delays between filing suit and seeking injunctive relief. *See e.g.*, *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1321 (Fed. Cir. 2012). Barqcue has not established either type of delay let alone that any delay has been undue.

Regarding the first period of time, Barqcue does not allege, let alone support, that Plaintiff knew about its infringement at any time before Plaintiff filed suit. That is, while Barqcue alleges that it first sold the infringing products in December of 2020, its infringement was apparently small enough to go unnoticed until more recently. Upon discovering the infringing sales by Barqcue and the other Defendants, Plaintiff brought this action to enforce its rights. Quite simply Barqcue does not allege that Plaintiff knew, or even should have known, about Barqcue's infringement in December of 2020 or any other date from which delay could be measured.

As to the second time period, there has been no delay in seeking injunctive relief. Plaintiff requested a TRO with its Complaint. *See* Dkts. 1 and 8 (both filed on March 28). Plaintiff then promptly moved to extend the TRO before it expired and promptly filed its Motion for a preliminary injunction before the TRO expired. *See* Dkts. 16, 20, 31, and 32.

Finally, Barqcue's arguments that all of the harm it is causing is compensable by a monetary award both ignores controlling case law and ignores the arguments actually raised in Plaintiff's Motion. Barqcue asserts that the harm being caused is entirely economic because Plaintiff alleged that "Plaintiff has its patent right only for a limited time" and "has shown a record of declining to license its patent rights and instead exploit the right of exclusion to further its interest in developing, marketing, and selling its own product." Dkt, 47, p. 4 (quoting Dkt. 8 at pp.

10

7-8). Barqcue is either ignoring or misinterpreting controlling caselaw on these issues.

The absence of prior licensing does not make all damages economic. Rather, it is the existence of prior licenses that can weigh against a finding of irreparable harm because it shows that the patentee feels it can be compensated through licensing payments. *See e.g., Cordis Corp. v. Boston Sci Corp.*, 99 Fed. Appx. 928, 934 (Fed. Cir. 2004) ("This court . . . has permitted trial courts to weigh licenses as part of the case rebutting the presumption of irreparable harm. Indeed, BSC notes that it could transfer its Taxus approval to a licensed competitor, in which case Cordis could not prevent competition.") (citation omitted). While there is no longer a presumption of irreparable harm in patent cases following *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), the logic of *Cordis Corp* and similar cases regarding the effect of licensing on irreparable harm is still valid. Under that logic, the presence of prior licensing demonstrates a lack of irreparable harm; ergo, the absence of prior licensing and the decision to exploit the right to exclude during the limited term of one's patent rights supports the finding of irreparable harm.

In addition to misinterpreting the effect of Plaintiff's decision not to license the asserted patent, Barqcue completely fails to address the other harms raised in Plaintiff's Brief. As noted in Plaintiff's Brief, Plaintiff is suffering irreparable harm at least because 1) Plaintiff has lost its non-monetary right to exclude; 2) Plaintiff's ability to collect monetary damages against foreign defendants, including Barqcue, is uncertain, at best; and 3) Plaintiff is losing market share, which it may never recover, as a result of the infringement. Barqcue completely fails to address these harms or explain why they are not irreparable. That is, Barqcue fails to explain how an award of monetary damages or a permanent injunction could ever make Plaintiff whole from these losses.

    **C.    Regarding Balance of Hardships and Public Interest – Barqcue Makes No Argument on Either Factor**

Barqcue does not include a section dedicated to balance of hardships or public interest in

its brief. Rather, Barqcue states in passing that:

> In sum, not only did the Plaintiff not provide a claim chart to Defendant, but it also offered scant evidence to substantiate its allegations. As a matter of law, showing the balance of hardships and public interest must be more compelling. The Plaintiff has failed this standard.

Dkt. 47, p. 4.

To the extent the foregoing is an argument that the balance of hardships tips in Barqcue's favor or that there is a compelling public interest that would be disserved by the injunction, the argument is undeveloped. In fact, Barqcue does not even explain what hardships it faces in view of the injunction, let alone how those hardships outweigh the harm to Plaintiff. The only statements that even attempt to identify harm being suffered by Barqcue are threadbare and unsupported. For example, Barqcue states (without support) that it "will suffer irreparable harm from the injunction that is disproportionate to the alleged infringing activity" and that "the TRO previously granted (and now the Preliminary Injunction) has substantially interfered with [Barqcue's] business and caused [Barqcue] significant loss." Dkt. 47, p. 2. Barqcue does not actually identify any harm, interference, or loss it purports to have suffered, let alone attempt to quantify the same. Similarly, Barqcue does not identify even a single harm to the public caused by the injunction. As the movant seeking to dissolve the Preliminary Injunction, Barqcue was required to come forward with *some* showing of these elements. Even considering Plaintiff's Motion anew and placing the initial burden on Plaintiff, Barqcue must be enjoined because Plaintiff has identified the irreparable harms it would suffer and the public interest in a functioning patent system. Those supported allegations outweigh the complete lack of argument by Barqcue.

### D.   Barqcue's Request to Unfreeze its Assets, to be Awarded its Fees and Costs, and to Increase the Bond Should all be Denied

Barqcue also asks that the Court unfreeze its assets. It is unclear whether this is an

alternative request for relief (*i.e.*, that if not vacated, the injunction be modified), but the effect would essentially eviscerate large portions of the Preliminary Injunction to the point that, if granted, the injunction would essentially be vacated. Because Barqcue has failed to show that the Preliminary Injunction should be vacated, its request to unfreeze the assets frozen by that Order similarly fail. Barqcue's arguments fail for other reasons as well. Barqcue asserts that the Court "may not freeze a defendant's assets solely to preserve a plaintiff's right to recover damages." Dkt. 47, p. 5 (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 325 (1999)). "However, courts have interpreted *Grupo Mexicano*'s holding to be restricted to actions at law where the plaintiff seeks only money damages. Accordingly, federal courts have granted orders freezing assets where the plaintiff sought both legal and equitable relief." *Revolutions Med. Corp. v. Medical Inv. Group, LLC*, 2012 U.S. Dist. LEXIS 186815, at *15 (D. Mass. Nov. 7, 2012) (citations to collected cases omitted); *see also Quantum Corp. Funding, Ltd. v. Assist You Home Health*, 144 F. Supp. 2d 241, 250 n.9 (S.D.N.Y. 2001) ("Indeed, courts since *Groupo Mexicano* have consistently found that where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets.") (and collecting cases). As the Second Circuit has explained, the Court has authority to freeze a defendant's assets where the plaintiff is "pursuing a claim for final equitable relief [ ] and the preliminary injunction is ancillary to the final relief." *Gucci Am. v. Bank of China*, 768 F.3d 122, 131 (2d Cir. 2014) (citing *De Beers Consol. Mines v. U.S.*, 325 U.S. 212, 219-20 (1945).

In contrast to the breach of contract and monetary damages at issue in *Grupo Mexicano*, Plaintiff's patent infringement claim raises both equitable and legal damages. *See e.g., Reebok Int'l Ltd. v. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994) (the patent statute provides that district courts have authority to grant injunctive relied "to preserve the legal interests of the parties against

13

future infringement which may have market effects never fully compensable in money.") *abrogated on other grounds, eBay Inc.* 547 U.S. 388, as recognized in *Voile Mfg. Corp. v. Dandurand*, 551 F. Supp. 2d 1301, 1305 (D. Utah 2008); see also *Hybritech, Inc.* 849 F.2d 1457. Moreover, the frozen assets (*i.e.*, the balance in Barqcue's Amazon account) are directly tied to the claims of infringement and the equitable relief sought for that infringement because, as alleged in the Complaint, it is through that account that Barqcue conducted its infringement. *See e.g.*, Dkt. 1, ¶¶ 7, 8, and 13. In other words, Plaintiff has not sought a freeze against an unrelated asset simply to provide funds for a later legal remedy. Rather, Plaintiff has sought a freeze to protect the equitable relief sought against the specific frozen assets contained in the infringing account.

Likewise, Barqcue's assertion that the scope of the asset freeze is somehow disproportionate to its acts of infringement are not supported and are contrary to the evidence. Barqcue asserts that it has been restrained from accessing more than $900,000 in its account. The records produced by Amazon, however, show only $423,906.21 in the enjoined account. *See* Exhibit 2 (Amazon document production, redacted to remove data regarding other Defendants, showing balance of Defendant Accounts as of April 28, 2023). Meanwhile, Amazon reported that Barqcue made more than $800,000 in infringing sales over at least five product listings. *See* Exhibit 3 (Amazon document production, redacted to remove data regarding other Defendants, showing sales totals by Defendant as of April 28, 2023). In other words, even considering the unsupported higher balance alleged by Barqcue, the balance of the restrained account is proportional to the scope of its infringement.

Barqcue also requests that it be awarded its fees and costs. That request fails for at least two reasons. First, the request assumes that Barqcue's motion would be granted. As outlined above, Barqcue fails to show that the Preliminary Injunction was improperly granted or that it

should be vacated based on changed circumstances. Second, Barqcue fails to demonstrate any harm purportedly caused by the injunction for which Barqcue should be compensated. That is, Barqcue does not allege, let alone support, that but for the injunction, Barqcue would have realized some financial gain or that it has been specifically harmed by lack of access to the balance in the account used for infringement. Presumably, and Barqcue has not alleged otherwise, Barqcue conducts business under other accounts and on other marketplaces. The only account that has been frozen is the account Barqcue used to conduct its infringement and the only sales that have been suspended are the infringing listings.

Finally, Barqcue's request to increase the bond also fails. As noted above, the balance of the frozen account closely tracks the infringing sales, from which Plaintiff seeks its award of profits or damages – Amazon's records show that the balance is about 50% of the infringing sales while Barqcue asserts, without support, that the balance slightly exceeds the volume of infringing sales. In either event, because Barqcue has not identified any actual or potential harm, let alone attempted to quantify that harm, it fails to justify an increase in the bond amount. In other words, even assuming, *arguendo*, that the injunction was ultimately shown to be improvident, Barqcue would regain access to the entire balance of the frozen account. Because Barqcue has not shown that delayed access to that particular account would harm it in any quantifiable manner, it cannot show that the current bond is insufficient to remedy any such unstated harm.

**IV.     CONCLUSION**

As shown above and in its initial motion, Plaintiff has a strong likelihood of success on the merits of this case and will suffer irreparable harm if the injunction is not maintained. Accordingly, Plaintiff respectfully requests that its preliminary injunction remain in effect until a final resolution of this case and that the injunction specifically not be vacated against Defendant #1 Barqcue.

DATED: June 28, 2023 Respectfully Submitted,

/s/ Nicholas S. Lee
Edward L. Bishop
ebishop@bdl-iplaw.com
Nicholas S. Lee
nlee@bdl-iplaw.com
BISHOP DIEHL & LEE, LTD.
1475 E. Woodfield Rd., Suite 800
Schaumburg, IL 60173
P: (847) 969-9123
F: (847) 969-9124

*Counsel for Plaintiff Tiara Bliss Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this June 28, 2023. Any other counsel of record will be served by electronic mail and/or first-class mail.

/s/ Nicholas S. Lee
Nicholas S. Lee